UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:02CV101-MU

| | |
|---|---|
| GRECON DIMTER, INC., | ) |
| | ) |
| Plaintiff, | ) **BRIEF IN SUPPORT** |
| | ) **OF DEFENDANT'S MOTION** |
| | ) **FOR RECONSIDERATION** |
| -vs.- | ) **AND/OR CERTIFICATION FOR** |
| | ) **INTERLOCUTORY APPEAL** |
| HORNER FLOORING CO., INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## INTRODUCTION

On May 16, 2003, this Court entered an Order declaring that German law shall govern this dispute. In support of that conclusion, the Court held that Plaintiff GreCon Dimter, Inc. ("GreCon"), had not waived the parties' German choice-of-law provision by pleading its Complaint under North Carolina law, because "the Complaint mentions no specific governing law." Defendant Horner Flooring Co., Inc. ("Horner"), now submits a German law analysis that, in conjunction with North Carolina statutes and common law, demonstrates conclusively that the Complaint is based on North Carolina law, not German law, and requests that the Court reconsider its Order and declare that Michigan law applies to this case.

Alternatively, Horner respectfully requests that this Court amend its Order to make the certification findings necessary under 28 U.S.C. § 1292(b) for the United States Court of Appeals for the Fourth Circuit to consider the applicable law question. Both parties agree that it would be better to obtain that determination now, rather than to wait and risk having to try the case a second time. Accordingly, Horner asks the Court to certify the question for appeal.



## BACKGROUND

### *The Court's Initial Ruling*

On May 16, 2003, this Court entered an Order, attached as <u>Exhibit A</u> ("Op."), determining that "German law shall cover the instant dispute." (Op. at 5.) In so ruling, the Court reached two independent conclusions. First, the Court held that GreCon did not waive the parties' German choice-of-law clause when it filed its Complaint, because "the Complaint mentions no specific governing law." (*Id.* at 3.) Second, the Court held that German law bears a "reasonable relation" to the parties' contract, pursuant to N.C. Gen. Stat. § 25-1-105(1), because "GreCon is a wholly-owned subsidiary of a German company," and "the saws which are the subject of the contract were manufactured in Germany." (Op. at 5.)

### *The Settlement Negotiations*

Since the Court's Order, the parties have diligently attempted to settle this case, including an all-day mediation session with Magistrate Max O. Cogburn, Jr. on June 17, 2003. The mediation and subsequent negotiations broken down, however, due in large part to the parties' inability to agree on the German law issue. Counsel for both parties have conferred regarding the interlocutory appeal and agree that such an appeal makes sense in these circumstances. In particular, both parties recognize the risk that substantial money and judicial resources may be expended conducting discovery, filing motions, and going to trial, only for the entire process to be repeated a second time if the choice-of-law issue is decided differently on appeal.

## ARGUMENT

**I.    This Court Should Reconsider its Order and Hold that GreCon Waived Application of German Law to this Dispute.**

A party may waive the right to enforce a contractual choice-of-law clause through its conduct in litigation. *Cargill v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991). Accordingly, when a party files a pleading invoking one jurisdiction's law, it cannot later attempt to enforce a choice-of-law provision invoking a different jurisdiction's law simply because the party perceives that the other law will be more advantageous. Rather, the party has waived its right to enforce the choice-of-law clause by seeking the protection of another jurisdiction's law. (Op. at 4, citing *Clarklift of Northwest Ohio v. Clark Equip. Co.*, 869 F. Supp. 533, 536 (N.D. Ohio 1994), *aff'd* 117 F.3d 1420 (6th Cir. 1997).)

This Court ultimately concluded GreCon did not waive the parties' German choice-of-law provision because "the Complaint mentions no specific governing law." While that statement is true, the Court did not have the benefit of an analysis comparing the allegations set forth in the Complaint to German law. Horner has obtained such an analysis and attached it as <u>Exhibit B</u> ("German Law Mem."). The following chart summarizes the allegations in the Complaint and sets the allegations side by side with North Carolina and German law. As the Court will appreciate, the comparison demonstrates conclusively that GreCon based its Complaint on North Carolina law, not German law, notwithstanding the Complaint's failure to cite the governing law:

3

| Complaint | North Carolina Law | German Law |
| --- | --- | --- |
| GreCon requests interest on the amount due under the contracts "at the rate of 8% per annum." (Compl., ¶¶ 6, 7, and Relief Req. ¶¶ 1, 2.) | "The legal rate of interest shall be eight percent (8%) per annum." N.C. Gen. Stat. § 24-1. | The German rate of interest on claims between companies is a variable base rate *plus* 8%, currently 9.22%. (German Law Mem. at 1.) |
| GreCon claims a right to the "cost of collection with reasonable attorney fees, said attorney's fees being no less than 15% of the outstanding principal and interest as of the date of the filing of this action." (Compl. ¶¶ 9, 10, and Relief Req. ¶¶ 1, 2, 3.) | Such a remedy is provided, if at all, by N.C. Gen. Stat. § 6-21.2 (where note, conditional sales contract, or other evidence of indebtedness provides for payment of attorney fees but does not specify any specific percentage, "such provision shall be construed to mean fifteen percent (15%) of the 'outstanding balance' owing"). | Under German law, there is a "loser pays" system. Collectable fees and costs are set forth in tables, which do not show fees and costs as a fixed percentage of the amount in dispute. (German Law Mem. at 1-2.) |
| GreCon states that if Horner pays the amounts owing within five days, the obligation to pay attorney fees will be void and unenforceable. (Compl., ¶ 22.) | This language is a mirror image of N.C. Gen. Stat. § 6-21.2(5). | There is no such provision in German law. (German Law Mem. at 5.) |
| GreCon pleads that the products have not been "taken for tax assessment or fine pursuant to a statute, or seized under an execution or attachment against the property of the Defendant; or if so seized, that it is, by statute, exempt from such seizure." (Compl., ¶ 16.) | N.C. Gen. Stat. § 1-473(4) requires that a claim and delivery affidavit state "That the property has not been taken for tax, assessment or fine, pursuant to a statute; or seized under an execution or attachment against the property of the plaintiff; or, if so seized, that it is, by statute, exempt from such seizure." | There is no such rule under German civil law. (German Law Mem. at 5.) |
| GreCon invokes principles of equity, claiming "unjust enrichment," "quantum meruit," and an "implied or quasi-contractual obligation." (Compl. ¶ 13.) | These equitable claims are all based on North Carolina common law.[1] | There is no concept of "equitable claims" *per se* under German law. There are no explicit German claims for "quantum meruit" or "implied contracts," and the German law concept of "quasi contracts" is quite different than that in the United States. (German Law Mem. at 2-4.) |
| GreCon claims unlawful conversion and requests that the Court treat the Complaint as a claim and delivery affidavit. (Compl. ¶ 15, and Relief Req., ¶ 8.) | This claim is based on North Carolina common law and N.C. Gen. Stat. § 1-473(2) (requirements for an affidavit supporting claim for unlawful conversion). | German law has no explicit action for "conversion." (German Law Mem. at 4.) |

---

[1] *See, e.g., Smith Chapel Baptist Church v. City of Durham*, 517 S.E.2d 874, 883 (N.C. 1999) (discussing North Carolina's common law unjust enrichment doctrine); *Lexington Tel. Co. v. Davidson Water, Inc.*, 468 S.E.2d 66, 68 (N.C. Ct. App. 1996) (quantum meruit); *Peace River Elec. Co-op, Inc. v. Ward Transformer Co.*, 449 S.E.2d 202, 213 (N.C. Ct. App. 1994) implied contracts).

In sum, then, although the Complaint does not cite specifically to the North Carolina statutes and common law decisions on which it relies, it is clearly based on North Carolina law, not German law. Under the holding in *Clarklift*, as described by this Court (Op. at 4), GreCon has waived the German choice-of-law clause and cannot invoke German law now, simply because GreCon believes such law is more favorable to it than the U.C.C. Horner respectfully requests that this Court reconsider its Order and declare that Michigan law applies to this dispute. (Horner Br. in Supp. of Mot. to Determine Applicable Law at 8-11.)

## II. Alternatively (or In Addition), the Court Should Certify its Ruling for Interlocutory Appeal.

Parties take interlocutory appeals where an appellate decision "may avoid protracted and expensive litigation." *Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc.*, 317 F.2d 741, 743 (4th Cir. 1963). As the parties have agreed, the present situation is an appropriate one for an interlocutory appeal. Accordingly, this Court should amend its Order, consistent with Federal Rule of Appellate Procedure 5(a)(3), to include the findings necessary for certification.

Interlocutory appeal from a non-final order may be taken only after the district court's certification of the order. 28 U.S.C. § 1292(b) (2003). Under Section 1292(b), the district court must certify that the order: (1) "involves a controlling question of law"; (2) "as to which there is a substantial ground for difference of opinion"; and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.*

Counsel for GreCon and Horner agree that the Court's Order regarding applicable law "involves a controlling question of law" and "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Thus, there is no dispute regarding factors one and three.

As for factor two, the additional German law information demonstrates that there should be no difference of opinion with respect to waiver, because GreCon relied on North Carolina law in filing its Complaint in this case, thereby nullifying the German choice-of-law clause. But even if the Court declines to reconsider its prior Order, there is, at minimum, "a substantial ground for difference of opinion" on this issue and certification is appropriate.

There are also grounds for a difference of opinion with respect to the Court's ruling that German law bears a "reasonable relation" to the parties' contract. As noted above, the Court cited two facts in support of its decision: (1) GreCon is a wholly owned subsidiary of a German company; and (2) GreCon incorporated German saws into the final product that it produced for Horner's Michigan plant. (Op. at 5.) But neither of these factors is sufficient to establish the necessary "reasonable relation" that North Carolina's Uniform Commercial Code requires. N.C. Gen. Stat. § 25-1-105(1).

First, a number of courts interpreting the exact same provision of the U.C.C. have held that the location of one party's incorporation is insufficient to create a "reasonable relation" to a jurisdiction's law. *See, e.g., General Elec. Co. v. Keyser*, 275 S.E.2d 289, 294 (W. Va. 1989) (rejecting New York choice-of-law clause under reasonable relation test even though plaintiff was incorporated there); *accord Leasing Serv. Corp. v. Diamond Timber, Inc.*, 559 F. Supp. 972, 975-76 (S.D.N.Y. 1983) ("The only New York contact with the dispute is that plaintiff, the assignee, is a New York corporation. This is not . . . sufficient to satisfy the "reasonable relation" test.") (citation omitted); *Brierley v. Commercial Credit Co.*, 43 F.2d 724, 725, 727 (E.D. Pa. 1929) (concluding Delaware had no "normal relation to the transaction," even though defendant was a Delaware corporation with its principal place of business in Delaware); *see also Sentinel Industr. Contracting Corp. v. Kimmins Industr. Serv. Corp.*, 743 So. 2d 954,

6

959 (Miss. 1999) (holding that application of Texas choice-of-law provision between Exxon Company, headquartered in Texas, and its contractor, Sentinel, would be unconstitutional because Texas had no reasonable relation to the contract).

Here, Germany is neither the state of incorporation nor location of any party to the transaction. Only GreCon's parent corporation is located in Germany. If a party's place of incorporation is insufficient to establish a "reasonable relation," then a party's *parent's* place of incorporation is likewise insufficient.

Second, the saws the Court referenced in its Order were not the only product GreCon delivered to Horner. The saws were merely one component of a larger system that GreCon designed in the U.S., sold to Horner in the U.S., shipped to Horner in the U.S., tested in the U.S., and serviced in the U.S.[2]

Horner has been unable to find a single case holding that the origin of a component part is itself enough to create a "reasonable relation." The dearth of cases makes sense, because to hold otherwise would result in the complete evisceration of the U.C.C.'s protections for buyers. For instance, automobiles often contain component parts manufactured in foreign countries. Under a "component part" theory, a U.S. automaker could subject a U.S. consumer to the foreign law of any number of jurisdictions, even if the automaker and the consumer were both U.S. residents, the contract was formed in the U.S., the car was assembled in the U.S., the car was sold and delivered in the U.S., and the car was serviced by the automaker in the U.S. That is precisely why the U.C.C. dictates that only jurisdictions with a "natural and vital connection" to a transaction may be chosen for the governing law. *Seeman v. Philadelphia*

---

[2] The saws made up only approximately one-third of the value of the contracts at issue. (Horner Br. in Supp. of Mot. to Determine Applicable Law, at 2 (detailing that the Saw Contract was worth $487,445, while the Complete Material Handling System Contract had a purchase price of $941,066, a total of $1,428,501).)

*Warehouse Co.*, 274 U.S. 403, 408 (1927) (cited by N.C. Gen. Stat. § 25-1-105, cmt. 1). And yet Horner now finds itself in the exact same position as the hypothetical U.S. consumer. GreCon's need to rely on its parent's place of incorporation and an ill-founded "component part" theory to sustain the German choice-of-law clause demonstrates there is substantial ground for differences of opinion on the question of "reasonable relation" as well.

## CONCLUSION

As the German law Horner has provided for the Court's consideration demonstrates, GreCon filed its Complaint in this matter relying solely on North Carolina law, not German law. In so doing, GreCon waived its right to enforce the parties' German choice-of-law clause. Horner therefore respectfully requests that this Court reconsider its Order and declare that Michigan law applies to this dispute.

Alternatively (or in addition), Horner respectfully requests that this Court amend its Order to certify it for interlocutory appeal. The statutory requirements for such certification are all satisfied, and the parties agree that such certification is prudent in these unique circumstances.

Accordingly, Horner respectfully requests that the Court enter an Order (1) declaring that Michigan law controls this dispute; and/or (2) certifying the controlling law issue for interlocutory appeal to the Fourth Circuit.


This the _16_ day of September, 2003

G. Michael Barnhill
N.C. State Bar No. 9690
Attorney for Defendant Horner Flooring Co., Inc.

8

**OF COUNSEL:**
**WOMBLE, CARLYLE, SANDRIDGE & RICE**
Professional Limited Liability Company
3300 One First Union Center
301 South College Street
Charlotte, North Carolina 28202
(704) 331-4900

Rodrick W. Lewis
John J. Bursch
Brian T. Lang
**WARNER NORCROSS & JUDD LLP**
400 Terrace Plaza
P.O. Box 900
Muskegon, Michigan 49443
(231) 727-2600

9

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2003, I served a copy of the foregoing **Brief in Support of Defendant's Motion for Reconsideration and/or Certification for Interlocutory Appeal** by placing said copy in a prepaid envelope, addressed to the person(s) hereinafter named, at the address(es) stated below, which is the last known address, and by depositing said envelope and its contents in the United States Mail at Charlotte, North Carolina.

ADDRESSEE:

Irving M. Brenner
Helms Mulliss & Wicker, PLLC
P.O. Box 31247
Charlotte, NC  28231

G. Michael Barnhill

FILED
CHARLOTTE, N.C.

03 MAY 16 AM 11: 06

U.S. DISTRICT COURT
W. DIST. OF N.C.

GRECON DIMTER, INC.,                    )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )          ORDER
                                        )
HORNER FLOORING CO., INC.,              )
                                        )
        Defendant.                      )
_____ )

THIS MATTER is before the Court upon the Defendant's Motion to Determine Applicable Law. In its Motion, Defendant Horner Flooring, Inc. (hereinafter "Horner") contends that resolution of this issue is necessary in order that the parties may properly plead their claims and defenses. It appears that resolution of the issue is indeed necessary, and this Court proceeds under Federal Rule of Procedure 44.1.

## I. Facts and Procedural History

The Court shall only briefly restate the facts, as the facts were previously stated in the Court's Order of July 10, 2002. Horner contracted with GreCon Dimter, Inc. (hereinafter "GreCon"), a North Carolina corporation, for the manufacture and installation of certain commercial saws. The saws were manufactured in Germany by GreCon's parent company and delivered to the United States, whereupon the saws were installed in Horner Michigan facility. The contract of sale contained a choice of law provision directing that the contract and any litigation ensuing therefrom would be "governed by and construed under the laws of Germany to the exclusion of all other laws of any other state or country (without regard to the principles of

1

conflicts of law)." The contract also contained a choice of forum clause selecting Germany as the exclusive forum for any disputes between the parties resulting from the contract.

Horner was disappointed with the performance of the saws and failed to make certain payments under the contract. GreCon filed a collection action in North Carolina Superior Court, whereupon Horner removed to this Court and filed counterclaims alleging, *inter alia*, breach of warranty. GreCon moved to dismiss the case in its entirety, arguing that the forum for the dispute was improper, the choice of forum provision having specified Germany as the required forum for any disputes. In its Order of July 10, 2002, this Court held that GreCon had waived the forum selection clause by filing its lawsuit in North Carolina, thus denying GreCon's Motion to Dismiss.

## II. The Arguments and Analysis

Horner now moves the Court to determine the issue of the law to be applied to the case, arguing that GreCon waived the German choice of law provision by pleading its claim under North Carolina law. Horner also makes the alternative argument that if GreCon has not waived the choice of law provision, the provision is unenforceable under North Carolina choice of law principles because German law does not bear a "reasonable relation" to the transaction between it and GreCon. Finally, Horner argues that in absence of an agreement regarding the law to be applied in this case, N.C.G.S. § 25-1-105(1) requires that Michigan law be applied to the transaction because Michigan has the "most significant relationship" to the transaction.

In opposition, GreCon argues that the German choice of law provision is explicit, unequivocal, and was an integral part of the contract it negotiated with Horner. Thus, it contends that the Court need not inquire any further into the contract, and should declare German law applicable to the case. As support for this argument, it contends that Germany bears more than a reasonable relation to the performance of the contract, a substantial amount of the manufacturing of

2

the saws having taken place there. In the alternative, GreCon argues that it has not waived the choice of law provision because it did not plead the law of North Carolina in its collection action or otherwise avail itself of North Carolina law. GreCon contends that either way the Court must ultimately give full effect to the German choice of law provision.

Having examined the briefs and the applicable law, the Court concludes that Horner's arguments ultimately fail. As to Horner's waiver argument, the Court concludes that GreCon has not waived the German choice of law provision. Waiver necessitates "the voluntary relinquishment or abandonment--express or implied--of a legal right or advantage." BLACK'S LAW DICTIONARY 1574 (7th ed. 1999). While GreCon did waive the choice of forum clause by filing in North Carolina, there is nothing in either the pleadings or the memoranda to indicate that GreCon did not intend to rely on German law. In fact, in its Reply Memorandum in support of its Motion to Dismiss, GreCon expressly argued that German law applies to this case. *See* GreCon Reply Mem. of June 14, 2002, at 10-11. Further, GreCon did not, as Horner contends, waive the choice of law provision by pleading the Complaint under North Carolina law. Rather, the Complaint mentions no specific governing law.

Horner also argues that *Clarklift of Northwest Ohio v. Clark Equipment Co.*, 869 F.Supp. 533 (N.D. Ohio 1994), and *Cargill v. Charles Kowsky Resources, Inc.*, 949 F.2d 51 (2nd Cir. 1991), cases provide persuasive authority for the conclusion that GreCon has waived the choice of law provision. Both cases are clearly distinguishable from the instant case. In *Clarklift*, a financing agreement between the parties contained a choice of law provision naming Michigan law as the controlling law. *Clarklift*, 869 F.Supp. at 535. The defendant in that case, who was a secured lender, filed a counterclaim against the buyer/debtor, requesting relief "solely and exclusively under the Ohio replevin and related statutes." *Id.* at 536. However, later in the case

3

the same secured lender sought attorneys fees and liquidation costs for certain collateral that it repossessed--fees and costs which would not have been allowed under Ohio law, but which were allowed under Michigan law. *Id.* The *Clarklift* court held that because the defendant lender initially sought and received protection under Ohio law, it could not later claim that the Michigan choice of law provision applied where it was advantageous. *Id.* Rather, the lender had waived its right to utilize Michigan law by seeking the protection of another state's law.

In a similar vein, the *Cargill* court held that "even when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's laws." *Cargill v. Charles Kowsky Resources, Inc.*, 949 F.2d 51, 55 (2nd Cir. 1991). However, despite Horner's arguments to the contrary, these cases are inapposite. The holdings in the *Cargill* and *Clarklift* cases are based upon one of the parties' reliance on laws other than the law selected in the relevant choice of law provision. As stated *supra*, such circumstances are simply not present in the instant case, and this argument fails.

Horner's alternative argument regarding the uneforceability of choice of law provision also fails. Horner argues that, pursuant to N.C.G.S. § 25-1-105(1) and *Cable Tel Serv., Inc. v. Overland Contracting, Inc.*, 574 S.E.2d 31 (N.C. App. 2002), the choice of law provision is unenforceable because it bears no "reasonable relation" to the making or performance of the contract itself. The general rule in North Carolina is that choice of law provisions are valid and enforceable, provided the parties "had a reasonable basis for their choice and the law of the chosen state does not violate a fundamental policy of the state of otherwise applicable law." *Cable Tel*, 574 S.E.2d at 34. *See* N.C. GEN. STAT. § 25-1-105(1). In *Cable Tel*, the parties' choice of law provision selected Colorado law, even though the contract was executed in North Carolina, the services were to be performed in Missouri, and neither of the parties had any contacts with

4

Colorado. *Id.* The *Cable Tel* court held that Colorado bore no relation at all to the contract, much less a "reasonable relationship," thus Colorado law could not apply. *Id.* Horner's argument regarding the *Cable Tel* case is that because it and GreCon are North Carolina corporations and because all pertinent conduct relating to the transaction took place in the United States, German law bears no reasonable relation to the contract. However, Horner's argument apparently ignores the fact that GreCon is a wholly-owned subsidiary of a German company--a fact of which it cannot seriously contend it was unaware--and that the saws which are the subject of the contract were manufactured in Germany. The Court cannot conclude that the choice of German law as the governing law in this case bears no reasonable relation to the performance of the contract between GreCon and Horner. Thus, the Court finds the provision enforceable, and Horner's argument without merit.

Because the Court finds Horner's arguments regarding waiver and uneforceability unpersuasive, the Court must enforce the choice of law provision in the contract between the parties. Thus, according to the parties' agreement, German law shall cover the instant dispute.

*III. Order*

IT IS THEREFORE ORDERED that German law shall govern the instant dispute between the parties.

This the 16th day of May, 2003.

Graham C. Mullen
Chief United States District Judge

5

United States District Court
for the
Western District of North Carolina
May 16, 2003


* * MAILING CERTIFICATE OF CLERK * *


Re: 3:02-cv-00101


True and correct copies of the attached were mailed by the clerk to the following:

        Andrew D. Taylor Jr., Esq.
        Andrew D. Taylor, Jr. & Associates
        3701 Latrobe Drive, Suite 130
        P.O. Box 221255
        Charlotte, NC 28222-1255

        Irving M. Brenner, Esq.
        Helms, Mulliss & Wicker, PLLC
        P. O. Box 31247
        Charlotte, NC 28231-1247

        Steven A. Meckler, Esq.
        Helms, Mulliss & Wicker, PLLC
        P. O. Box 31247
        Charlotte, NC 28231-1247

        G. Michael Barnhill, Esq.
        Womble, Carlyle, Sandridge & Rice
        3300 One Wachovia Center
        301 South College St.
        Charlotte, NC 28202-6025

        Brian T. Lang, Esq.
        Warner Norcross & Judd LLP
        400 Terrace Plaza
        Post Office Box 900
        Muskegon, MI

        Roderick W. Lewis, Esq.
        Warner Norcross & Judd LLP
        400 Terrace Plaza
        Post Office Box 900
        Muskegon, MI

```
cc:
Judge                    ( )
Magistrate Judge         ( )
U.S. Marshal             ( )
Probation                ( )
U.S. Attorney            ( )
Atty. for Deft.          ( )
Defendant                ( )
Warden                   ( )
Bureau of Prisons        ( )
Court Reporter           ( )
Courtroom Deputy         ( )
Orig-Security            ( )
Bankruptcy Clerk's Ofc.  ( )
Other_____     ( )
```

Frank G. Johns, Clerk

Date:_____

By: _____
       Deputy Clerk

# MEMORANDUM

TO:      John J. Bursch /

FROM:    Sebastian von Wallwitz/Matthias Nordmann

DATE:    September 16, 2003

RE:      **Grecon Dimter, Inc. v. Horner Flooring Co., Inc.**
             **German Law Questions**

---

(1)     In the Complaint, Grecon claims interest on the amount due under the Contracts "at the rate of 8% per annum." (Compl., ¶¶ 6, 7, and Relief Requested ¶¶ 1, 2.) This rate is the legal rate of interest in North Carolina, N.C. Gen. Stat. § 24-1, which applies when the parties have not specified a rate of interest in their contract.

> **Q: What would the German rate of interest be, if any?**
>
> **A:** By law, the interest rate *per annum* on claims between companies is 8% above the "base interest rate" (see §§ 288 (2), 247 of the German Civil Code ("BGB")). This base interest rate is determined by the German Federal Bank / European Central Bank twice a year. Currently, the base interest rate is 1.22%; therefore, the German interest rate to be paid currently on amounts due would be 9.22%. However, the Parties could agree on a different rate limited by good faith only.

(2)     In the Complaint, Grecon claims a right to the "cost of collection with reasonable attorney fees, said attorney's fees being no less than 15% of the outstanding principal and interest as of the date of the filing of this action." (Compl., ¶¶ 9, 10, and Relief Requested ¶¶ 1, 2, 3.) This claim appears to be based on N.C. Gen. Stat. § 6-21.2(2).

> **Q: What would German law say about the right to costs and attorney fees? Is there a law that mirrors the "15%" provision?**
>
> **A:** There is no law which mirrors the 15% provision. As you may know, in Germany there is a statutory "loser pays" principle in relation to court fees and the opposing side's attorneys fees. Under this statutory rules the applicable court costs (see Court Costs Code ("GKG")) and attorney fees (see Federal Order on Attorneys Fees ("BRAGO")) which are to be borne by the party losing the action depend on the categories of legal actions taken and on the amount in dispute. Based on these two criteria, costs and

Case 3:02-cv-00101-FDW-CH   Document 39   Filed 09/16/03   Page 18 of 23

fees refundable can be read from certain costs tables which too are provided by law. These costs tables do not show the costs and fees to be a specific fixed percentage of the amount in dispute; instead costs follow a decreasing slope as the amounts in dispute increase.

(3)     In the Complaint, Grecon invokes principles of equity, claiming "unjust enrichment," "quantum meruit," and an "implied or quasi-contractual obligation." (Compl, ¶ 13.) These claims are all based on North Carolina common law.

**Q: Does German law provide for equitable claims? If so, does it provide specifically for (1) unjust enrichment, (2) quantum meruit, (3) implied contracts, or (4) quasi contracts?**

**A:** The underlying concept of German law differs substantially from the concepts of American law. While the later is based on a case law system, German law is codified to a large extent with jurisprudence being drawn upon in aide of interpreting the respective code's provisions.

If parties have agreed on a contract, courts would first try to interpret the specific contractual provisions in question in order to establish the parties true intent. If this was not possible the court would rely on codified law.

Most of the principles listed above are reflected in some way or another in codified German law. However, not all of them have can be qualified as "claims" based on a specific provision in law:

In particular, there is no concept of „equitable-claims" outside codified law in Germany. However, the general principles behind it are reflected in different places of the law, in particular the provision on good faith (§ 242 BGB) which provides an instrument by which any claim given by contract or law has to be corrected and modified, if necessary, with regard to general principles of fairness and good faith. However, in the vast majority of the cases this provision of good faith itself does not establish a specific claim or action as "equity" appears to do.

As to (1) above: Indeed, also German code law provides for specific stipulations on "unjust enrichment" (see §§ 812 BGB ff.: "*ungerechtfertigte Bereicherung*"): in principle, anyone who has obtained goods, chattel or money from someone else without being entitled thereto by either law or contract is obligated to return such goods, chattel or money. The same applies if an entitlement originally present is later on cancelled or falls away for any other reason. Only if the restitution was no longer possible, there would be grounds for monetary damages.

- 2 -

As to (2) above: A claim for "*quantum meruit*" (as much as he deserves) is not explicitly given in codified German law. Instead, if services were rendered to one party by another party, absent a specific agreement on the consideration therefore, an obligation by the first party to pay a consideration for the services obtained was deemed to be tacitly agreed as between the parties provided such services normally are rendered against consideration only (see § 611 BGB). Accordingly, the other party having rendered the services can claim the "fixed rates" for this kind of services; if on the other hand no such fixed rates existed, it can claim the "usual" consideration (§ 612 BGB). Finally, only if no usual consideration can be determined, an "adequate" consideration shall be paid. However, there is no explicit stipulation which by law grants a right to *quantum meruit*.

As to (3) above: Equally, there is no explicit claim under "implied contracts" in codified German law. However, the principle as such exists, i.e., a court may find that the parties have entered into an agreement even in the absence of an express declaration to this effect. If no express contracts exists, the courts will try to establish each party's intention by way of interpreting their respective conducts and a deduction from the general circumstances. It would then establish that under the (implied) contract one or the other party would have a certain claim.

As to (4) above: Under German law, one has to distinguish between the term "quasi contracts" and the concept under US law as we understand it.

Under German law, the concept being applied in absence of an explicit contract in situations where there is unjust enrichment due to services rendered without cause is reflected by two different codified claims: the claim for unjust enrichment itself which has been dealt with under no. 1 above and the concept of *negotiorum gestio* ("*Geschäftsführung ohne Auftrag*" see §§ 677 BGB ff.): If X renders services for the benefit of Y, without being commissioned to do so, and if such services tally with the intentions and the interests of Y, then X can demand from Y compensation of his expenses (with the exception of time and labour). However, if such services belonged to the scope of services professionally rendered by X then the usual compensation of time and labour can be claimed by X. If instead the services do not tally with the intents or interests of Y, instead of the expenses, X can claim a restitution of what Y has obtained through the services.

On the other hand, the term „quasi contracts" in German law refers to

Case 3:02-cv-00101-FDW-CH   Document 39   Filed 09/16/03   Page 20 of 23

three quasi-contractual relationships: (i) pre-contractual obligations ("*culpa in contrahendo*" or "c.i.c."), (ii) a so called "positive" violation of the contract ("*positive Vertragsverletzung*" or "pVV") and (iii) the cancellation of the common understanding of the prerequisites of a contract ("*Wegfall der Geschäftsgrundlage*" or "WGG").

As to (i): During the negotiations of a contract, before it was signed or agreed, there already is a relationship of good faith and trust which establishes certain obligations as between the parties. If one party culpably violates such obligations, the other party can claim damages (§§ 311, 311a BGB).

As to (ii): In the event one party violates secondary contractual obligations under a contract, the other party can claim damages therefrom (§§ 280 BGB ff.).

As to (iii): Should the very principle commercial circumstance of a transaction substantially after the conclusion of a contract, the obligated party can demand an adjustment or cancellation of the agreement (§ 313 BGB).

(4)    In the Complaint, Grecon claims that Horner Flooring "unlawfully converted" the products. (Compl., ¶ 15.) Again, this claim is based on North Carolina common law, as well as N.C. Gen. Stat. § 1-473(2).

**Q: Does German law have a cause of action for "conversion"?**

**A:** Not explicitly. Under German law, in the event someone unlawfully converted (i.e., appropriated) the property of someone else, that other one can demand the delivery of the unlawfully converted property ("*Herausgabeanspruch aus Eigentum*", see § 985 BGB). Only if delivery was impossible, that other party under certain conditions could claim monetary damages (§§ 989, 990 BGB).

(5)    In the Complaint, Grecon claims it "is lawfully entitled to the recovery of and the immediate possession of said Products." (Compl., ¶ 14.) This claim for replevin is based on N.C. Gen. Stat. § 1-473(1).

**Q: Does German law have such a remedy for claim and delivery and/or replevin?**

**A:** Yes, see answer to question (4) above. The relationship between claims for conversion and for replevin is exactly the opposite from what

- 4 -

it is under US law. Under German law, one whose property was unlawfully converted would first claim delivery of his property and then damages if delivery did not succeed. Apparently, it is the other way round under US law.

(6)     In the Complaint, Grecon pleads that the products have <u>not</u> been "taken for tax assessment or fine pursuant to a statute, or seized under an execution or attachment against the property of the Defendant; or if so seized, that it is, by statute, exempt from such seizure." (Compl., ¶ 16.) This is a statutory exception to a claim and delivery and/or replevin claim. N.C. Gen. Stat. § 1-473(4).

**Q: Assuming that German law provides a claim and delivery and/or replevin remedy, does the law also have this exception?**

**A:** There is no such rule under German civil law. Whether it exists under German tax law needs to be established by a tax lawyer which we could contact upon request.

(7)     In the Complaint, Grecon states that if Horner Flooring pays the principal amount owing plus interest within five days, the obligation to pay attorney fees shall be void and unenforceable. (Compl., ¶ 22.) This statement is based on N.C. Gen. Stat. § 6-21.2(5)

**Q: Is there a similar provision under German law?**

**A:** No, there is no such provision under German law. Instead, the concept is a different one: any payment is payable when due (the due date being determined either by contract or law). In the event the debtor had not paid until the due date, the creditor would be required to send a payment reminder setting a final deadline for the payment. If such deadline expired without the payment being made, the debtor would be in default and would owe the creditor the amount plus damages which would include attorneys fees limited to the rates set forth by the official tables for costs and fees mentioned under (2) above.

Munich, August 21, 2003

- 5 -

Sebastian von Wallwitz / Matthias Nordmann M.A.