# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## DOCKET NO. 3:02-CV-101-W

| | |
|---|---|
| GRECON DIMTER, INC., )<br>)<br>Plaintiff/Counter-Defendant, )<br>)<br>vs. )<br>)<br>HORNER FLOORING CO., INC., )<br>)<br>Defendant/Counter-Plaintiff. )<br>) | ORDER |

## BACKGROUND

This matter is before the Court on its own motion, where in the course of final pretrial preparations the Court was unable to determine to its satisfaction the existence of federal subject matter jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(a), given that the amount in controversy set forth in GreCon's complaint (without regard to Horner's answer and counterclaims, filed contemporaneously with its notice of removal) falls below the $75,000 jurisdictional requisite.[1] Accordingly, by Order entered 19 December 2006, the Court requested that the parties attend the final pretrial conference, held on 22 December 2006, prepared to address the issue of whether this case must be remanded, pursuant to 28 U.S.C. § 1447(c), to the Mecklenburg County Superior Court for trial and entry of judgment.

At hearing, both parties offered brief oral presentations supplemented by informal written

---

[1] Plaintiff GreCon Dimter, Inc. ("GreCon"), filed this lawsuit in state court seeking contract damages in the amount of $43,569.80, exclusive of interest and costs. Defendant Horner Flooring Co. ("Horner") filed a notice of removal along with compulsory counterclaims seeking, among other relief, rescission of those contracts, which are valued at $1,328,357.

memoranda.  By and large, the parties' initial submissions confirmed what the Court's own research had revealed, to wit:

1. Both Wright and Miller's and Moore's treatises on federal jurisdiction recognize the existence of a split of authority on the issue of whether the value of a counterclaim may be considered in determining the jurisdictional amount in controversy, with the modern trend and majority view appearing to be that it cannot.  See C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction §§ 3706 & nn.43-45, 3725 & nn.58-59 (3d ed. 1998); J. Moore, Moore's Federal Practice: Civil § 107.14[2][g][v] & nn. 108.4-.5 (3d ed. 2006).

2. District court decisions within the Fourth Circuit, and even within North Carolina, are likewise split as to whether the value of a counterclaim may be considered in determining the jurisdictional amount in controversy, with the only discernable published authority from within the Western District of North Carolina (per Judge Woodrow Wilson Jones) holding that it cannot. Compare Cabe v. Pennwalt Corp., 372 F. Supp. 780 (W.D.N.C. 1974); West Virginia State Bar v. Bostic, 351 F. Supp. 1118 (S.D.W.V. 1972); and Burton Lines, Inc. v. Mansky, 265 F. Supp. 489 (M.D.N.C. 1967); with Congaree Broadcasters, Inc. v. TM Programming, Inc., 436 F. Supp. 258 (D.S.C. 1977); National Upholstery Co. v. Corley, 144 F. Supp. 658 (M.D.N.C.1956); and McLean Trucking Co. v. Carolina Scenic Stages, Inc., 95 F. Supp. 437 (M.D.N.C. 1951).

3. A panel of the Fourth Circuit recently suggested in dictum that a "counterclaim may not be used in calculating the amount in controversy." R.L. Jordan Oil Co. v. Boardman Petroleum, Inc., 23 Fed. Appx. 141, 144-45 (4th Cir. Dec. 3, 2001).

In sum, the weight of authority persuasive to this Court leans squarely on the side of, albeit falls well short of dictating, a remand.  In the thick of this jurisprudential quagmire, counsel for Horner pulled a magic rabbit from its legal top hat: a century-old Supreme Court decision which involves materially indistinguishable facts and which holds that removal of a case involving a jurisdictionally insufficient claim for relief is not jurisdictionally defective where the federal court proceeds to judgment on a counterclaim that satisfies the jurisdictional amount in controversy – a

decision, however, which remarkably has escaped mention in the major treatises and leading court decisions on the subject of whether counterclaims may be counted toward the jurisdictional amount. Mackay v. Uinta Development Co., 229 U.S. 173 (1913). In light of Mackay's exhumation from legal obscurity, the Court ordered additional briefing. Based on the parties' submissions and its own review of the law, the Court is now prepared to render its determination on the issue of subject matter jurisdiction.

## HORNER'S REMOVAL INITIALLY WAS IMPROPER

Removal of a case from state to federal court is governed by federal statute and implemented according to federal standards. 28 U.S.C. § 1441 *et seq.*; Chicago, Rock Island & Pacific R. Co. v. Stude, 346 U.S. 574 (1954). The Court's imperative therefore is to give effect to the intent of Congress as expressed through the explicit statutory language and the structure and purpose of the statute. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990). Furthermore, the removal statutes are in abrogation of state sovereignty and therefore are to be strictly construed against removal. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).

As a preliminary matter, the Court agrees with the conclusion of Judge Jones in Cabe v. Pennwalt Corp., 372 F. Supp. 780 (W.D.N.C. 1974), that the removal statutes, properly understood, evidence a congressional intent not to permit removal on the basis of a defendant's counterclaim. For example, 28 U.S.C. § 1441(a) grants the right of removal solely to non-resident defendant(s); *i.e.*, parties who have been involuntarily hailed into a foreign jurisdiction to defend themselves against the potentiality of a monetary judgment exceeding the jurisdictional minimum. As will be demonstrated in subsequent discussion, the prevalent argument in favor of allowing removal on the basis of a counterclaim is based largely on a counterfactual realignment of the parties by which it is

3

hypothesized that the defendant is really a plaintiff-in-interest who could have established federal jurisdiction by first filing his counterclaims in a federal court complaint. The necessity of such a hypothetical realignment to establish federal jurisdiction, however, undermines the argument that the removing party's interest in the lawsuit is that of a "defendant" within the meaning intended by Congress in the removal statute.

Moreover, 28 U.S.C. § 1446(b), which delineates the procedure for effectuating a removal, states that a notice of removal must be accompanied by the "initial pleading" upon which the court's removal jurisdiction is based. That statute also provides in further detail that if "the case stated by the initial pleading is not removable," a case may be removed after service upon the "defendant" of an "amended pleading" from which it can be ascertained that the case is one which is or has become removable. The term "initial pleading" plainly excludes a defendant's statement of counterclaims, which appears in the defendant/counter-claimant's "responsive pleading," and so the statute's explicit reference to the "initial pleading" as the source of a federal court's removal jurisdiction further evidences Congress's intent to prohibit removals on the basis of a defendant's counterclaims. Therefore, the Court concludes that Horner improperly removed this case to federal court, where it appears to a legal certainty that GreCon would not be able to secure a judgment in an amount exceeding the jurisdictional minimum based on its state court complaint.

By contrast to the removal statute, the general diversity jurisdiction statute, 28 U.S.C. § 1332(a), contains no specific language indicating a congressional intent to limit a federal court's original jurisdiction to the statement of the case as set forth in the plaintiff's complaint.[2]  Cf.

---

[2] Such a requirement – if one exists at all – would have arisen out of a judicially-created rule of construction. Cf. Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 8-11 & n.8
(continued...)

Swallow & Assoc. v. Henry Molded Products, Inc., 794 F. Supp. 660, 663 (E.D. Mich. 1992). Rather, the statute requires only that the "matter in controversy" exceeds $75,000; and the term "controversy," which appears to be borrowed from Article III's "case or controversy" requirement, is susceptible of a construction which includes not only the claims for relief set forth in the plaintiff's complaint, but also the compulsory counterclaims which arise from a common nucleus of operative facts and which the defendant must assert in response to the complaint or forever waive. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966); Wigglesworth v. Teamsters Local 592, 68 F.R.D. 609, 611 (E.D. Va. 1975).

The above-stated analysis is consistent with the weight of authority on point. Courts of appeals consistently have held that subject matter jurisdiction exists when a plaintiff originally files in federal court a jurisdictionally insufficient claim for relief, but the defendant – instead of protesting jurisdiction and moving to dismiss – answers the complaint with a jurisdictionally sufficient counterclaim. See Spectacor Management Group v. Brown, 131 F.3d 120 (3d Cir. 1997); Geoffrey E. MacPherson, Ltd. v. Brinecell, Inc., 98 F.3d 1241 (10th Cir. 1996); Fenton v. Freedman, 748 F.2d 1358 (9th Cir. 1984); Motorists Mutual Ins. Co. v. Simpson, 404 F.2d 511 (7th Cir. 1968). However, district courts consistently have distinguished this line of cases and refused to extend them to the removal context, where there exists independent grounds to conclude that Congress did not intend to allow removal based on counterclaims, provided at least that the plaintiff lodges a timely objection to the purported removal. See, e.g., Hill v. MONY Life Ins. Co., 75 F. Supp. 2d 1328

---

[2](...continued)
(1983) (acknowledging that the well-pleaded complaint rule, as it has developed in the context of federal question jurisdiction, sets jurisdictional limits more narrowly than a plain reading of the statutory language "arising under" would suggest or permit).

(M.D. Ala. 1999); Central Associated Carriers, Inc. v. Nickelberry, 995 F. Supp. 1031 (W.D. Mo. 1998); Independent Machine Co. v. International Tray Pads & Packaging, Inc., 991 F. Supp. 687 (D.N.J. 1998). This distinction, well established in the contemporary case law, will be of critical importance in the analysis to follow.

## MACKAY'S HOLDING AND ITS IMPLICATIONS

The Mackay case originated in a Wyoming state court as a suit for common law trespass brought by Uinta Development Co., a Wyoming corporation, against Mackay, a citizen of Utah, and so complete diversity was present. Uinta sought damages in the amount of $1,950, but the required amount in controversy for federal subject matter jurisdiction was then $2,000, and so that jurisdictional element was lacking. Mackay answered the complaint and ultimately filed counterclaims based on both state and federal law and seeking $3,000 in damages. Mackay subsequently filed a procedurally defective[3] petition to remove the case to federal court. Uinta failed to object to the propriety of the removal, and the federal court granted the petition "on the theory that the parties were citizens of different States, that the construction of Federal statutes was necessarily involved, and that the amount in dispute, as disclosed by the counter-claim, exceeded $2,000." Mackay, 229 U.S. at 174.[4] On appeal after the entry of judgment on the merits in Uinta's favor, the

---

[3] The removal statute in effect at the time required that a petition for removal be filed before the responsive pleading, and so Mackay's petition for removal, which was filed after his answer and based on the prayer for relief set forth in his counterclaims, was procedurally improper. Accord St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 291 (1938) ("[The amount in controversy] as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition [for removal] before the time for answer or forever lose his right to remove."). However, the Mackay Court treated the propriety of removal as a distinct issue from whether the trial court possessed subject matter jurisdiction.

[4] The presence of a federal question in Mackay's counterclaims is not integral to the Mackay Court's ultimate holding on the issue of whether the jurisdictional amount in controversy may be satisfied by
(continued...)

Eighth Circuit (apparently *sua sponte*) certified to the United States Supreme Court the question of whether the trial court possessed subject matter jurisdiction over the removed case by virtue of the counterfactual that subject matter jurisdiction would have existed if Mackay had first invoked federal jurisdiction by commencing an action in federal court upon his $3,000 claim, with Uinta's $1,950 trespass suit then interposed as the counterclaim. The Supreme Court answered the question thus presented in the affirmative, stating:

> [It is] unnecessary to consider the status of the parties in the state court, and who was technical plaintiff and who technical defendant, or whether Mackay, a non-resident defendant, sued in a state court for $1,950, could, by filing a counterclaim for $3,000, acquire the right to remove the case to the United States court. The case was removed in fact, and, while the parties could not give jurisdiction by consent, there was the requisite amount and the diversity of citizenship necessary to give the United States Circuit Court jurisdiction of the cause.

Id. at 175-76.

Charitably read, Mackay recognizes two distinct aspects of removal "jurisdiction" – one related to the federal court's jurisdiction over the subject matter and one related to its jurisdiction over the parties. As with suits originally filed in federal court, the subject matter jurisdiction aspect cannot be waived or conferred by the consent of the parties. Accord Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). However, Mackay implies (and subsequent authority appears to confirm) that the removal statute imposes no limitations on subject matter jurisdiction independent of the general federal question and diversity statutes. Rather, the relevant *jurisdictional* inquiry is the counterfactual certified to the Supreme Court in Mackay: that

---

[4](...continued)
reference to the value of the counterclaims, since both the federal question and diversity jurisdiction statutes then in effect required a $2000 amount in controversy. Ch. 866, § 1, 25 Stat. 433-34 (1888).

is, whether the whole controversy as it is presented to the court at the time judgment is to be entered originally could have been maintained in a federal forum.  See T.R. Grubbs v. General Electric Credit Corp., 405 U.S. 699, 702 (1972); Caterpillar Inc. v. Lewis, 519 U.S. 61, 72-73 (1996); Korea Exchange Bank v. Trackwise Sales Corp., 66 F.3d 46, 50 (3d Cir. 1995).  And Mackay holds that for purposes of this inquiry it is irrelevant "who [is] the technical plaintiff and who [is the] technical defendant," so long as the parties are diverse and the disputed amount exceeds the jurisdictional minimum.

The corollary to this first holding is that any irregularities in removal which do not implicate the court's subject matter jurisdiction are inherently procedural in nature and therefore, like defects in personal jurisdiction and process generally, are waived by a party's voluntary submission to the court's jurisdiction.  See Mackay, 229 U.S. at 176.  Since Mackay implicitly held the removal statute to be non-jurisdictional, these so-called procedural defects which are subject to waiver would include non-compliance with any of the requirements that the removal statute might be read to impose above and beyond the jurisdictional limitations imposed by Article III, section 2 of the United States Constitution and Title 28, chapter 85 of the United States Code.  Accord Green Tree Financial Corp. v. Arndt, 72 F. Supp. 2d 1278, 1283-85 (D. Kan. 1999).  Thus, in Mackay, while the Supreme Court appears to have assumed that a removal based solely on the prayer for relief in the defendant's counterclaim could not be accomplished in conformity with the removal statute,[5] the Court held that because both diversity of citizenship and the requisite amount in controversy were present, "the manner in which the case was brought or how the attendance of the parties in the United States court was secured" could be "disregarded" since the parties had waived any objection by their voluntary

---

[5] See supra note 3.

8

prosecution of the lawsuit in a federal forum. 229 U.S. at 176-77.

Put into context, Mackay appears to undermine three recurring arguments used against the consideration of counterclaims in the valuation of the jurisdictional amount in controversy, at least as they pertain to the case at bar. The first such argument is that reliance on the counterclaim for a jurisdictional basis flies in the face of the well-pleaded complaint rule. See, e.g., Holmes Group, Inc. v. Vornado Air Circulation Sys., 535 U.S. 826, 830 (2002); Independent Machine Co., 991 F. Supp. at 693; Meridian Aviation Service v. Sun Jet Int'l, 886 F. Supp. 613, 615 (S.D. Tex. 1995). However, judicial formulation of the well-pleaded complaint rule predated the Mackay decision by at least five years, see Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908), and was found to be "firmly settled" in the Court's jurisdictional jurisprudence in a decision rendered the very next term following Mackay, see Taylor v. Anderson, 234 U.S. 74, 75-76 (1914). Furthermore, the well-pleaded complaint rule was not something that had been relegated solely to federal question cases (the context in which it is most commonly referenced), but was adapted by the Supreme Court to the amount-in-controversy context in a line of early cases holding that "the sum claimed by the plaintiff . . . from the face of the pleadings" determines the amount in controversy for jurisdictional purposes. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). It therefore borders on incredulity to think that the Court failed to consider the implications of the well-pleaded complaint rule when it decided Mackay, and the Court's omission of any mention of the well-pleaded complaint rule (which then only forbade federal jurisdiction based on an anticipated or actual defense) likely has doctrinal significance: namely, that the Supreme Court of that era viewed federally-cognizable counterclaims (in which a defendant technically stands in the posture of a complainant) much differently than federally-cognizable defenses. In other words, Mackay

expresses an implicit understanding that a compulsory counterclaim, no less than a complaint, forms the basis of a single, indivisible controversy which the pleadings put at issue before the tribunal, distinguished only by the fortuity of which party has won or lost the race to the courthouse.

The second and third commonly cited arguments against the consideration of counterclaims are based on the arguments set forth more fully above: specifically, the familiar maxim that the removal statute must be strictly construed, together with a plain reading of the statute from which it can be inferred that Congress intended removal to be so limited. Mackay, however, removes from the jurisdictional analysis all consideration of the proper construction of the removal statute by focusing instead on the statutes dealing with federal courts' original jurisdiction and the counterfactual inquiry of whether the suit would have been proper had it originally been brought in an analogous posture (but without regard to technical niceties such as who was first to file) in the federal forum. Thus, while this Court is inclined to agree in principle with Judge Jones' analysis in Cabe v. Pennwalt Corp., 372 F. Supp. 780 (W.D.N.C. 1974) (holding that removal on the basis of a counterclaim is improper), to be reconciled with Mackay the Cabe case must be distinguished on the basis that Cabe timely moved to remand and therefore never acquiesced to this essentially procedural defect in the court's exercise of removal jurisdiction.

The modern removal statute, codified at 28 U.S.C. § 1447(c), mandates that an objection to "any defect [in removal] other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." Following Mackay, subject matter jurisdiction in this case may be predicated on Horner's counterclaims in excess of $1.3 million, even if the removal statute, properly construed, would not generally permit removal by a defendant based solely on the amount of recovery sought in his own counterclaim. Any objection to the propriety of Horner's removal was

waived by GreCon due to its failure to move for a remand within its thirty-day window of opportunity. Accordingly, remand at this juncture would be improper under the authority of Mackay unless that decision has been eroded by subsequent binding authority.

## MACKAY'S CONTINUING VITALITY

The unique set of facts present in Mackay has not since recurred before the Supreme Court; thus, that Court has neither explicitly reaffirmed nor overruled Mackay. However, the Court recently decided a case directly bearing on the use of federally-cognizable counterclaims to establish subject matter jurisdiction in federal court. In Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc., 535 U.S. 826 (2002), the Supreme Court held that the United States Court of Appeals for the Federal Circuit, which has jurisdiction to hear appeals of cases which "arise under" federal patent law, lacked jurisdiction over the appeal of a case in which the only patent claim had been injected by the defendant as a compulsory counterclaim to the non-patent claims asserted in the plaintiff's complaint. The Court justified its decision as a logical application of the "longstanding well-pleaded-complaint rule," although the Court apparently recognized that it was breaking new ground when it noted that "our prior cases have only required us to address whether a federal defense, rather than a federal counterclaim, can establish 'arising under' jurisdiction." Id. at 831-32.

While it is not the prerogative of this Court to unduly circumscribe the Supreme Court's decision in Holmes Group, it can by the same token hardly be denied that the Court's holding was grounded in a cursory analysis of prior cases that altogether neglected to consider a rich and extensive (though not always consistent) line of authority which had developed in relation to the question of whether counterclaims may be credited for the purpose of establishing other elements

of federal jurisdiction (such as the amount in controversy).⁶ Narrowly construed, Holmes Group might therefore be read not to extend outside of the federal question ("arising under") context in which it arose. See id. at 834 n.4 (noting that the well-pleaded complaint rule developed in the context of and is invoked by the statutory phrase "arising under").

However, if Holmes Group means anything at all, it at least signals a rejection of Mackay's central underlying assumption that the order of pleading signifies nothing more than who has won the race to the courthouse and therefore is of no fundamental jurisdictional consequence.

Accepting Holmes Group as an authoritative pronouncement on the current state of the law, the values of uniformity and ease of judicial administration – not to mention analytic consistency – would support extending Holmes Groups's holding to the diversity context, such that the jurisdictional amount in controversy "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration." Holmes Group, 535 U.S. at 830 (quoting Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 809 (1988)); see also R. Fallon et al., Hart & Weschler's The Federal Courts and the Federal System 1480 (5th ed. 2003) ("The Court's rationale [in Holmes Group] would appear equally applicable in a diversity case where the sole basis for asserting the requisite amount-in-controversy rests on the amount in dispute with respect to a counterclaim.").

---

⁶ In addition to Mackay, see also Horton v. Liberty Mutual Insurance Co., 367 U.S. 348 (1961) (suggesting that diversity jurisdiction may be present where the plaintiff reasonably anticipates that he will have to defend against a counterclaim sufficient to satisfy the jurisdictional amount, a result even more clearly at odds with the Court's understanding of the well-pleaded complaint rule as applied to federal question jurisdiction, compare id. at 359 (Clark, J., dissenting)). Furthermore, a number of courts of appeals had held, prior to Holmes Group, that diversity jurisdiction could be maintained by reference to a defendant's well-pleaded counterclaim. See Spectacor Management Group v. Brown, Geoffrey E. MacPherson, Ltd. v. Brinecell, Inc., Fenton v. Freedman, and Motorists Mutual Ins. Co. v. Simpson, supra.

Clearly, then, Holmes Group casts legitimate doubts on the continuing vitality of Mackay. Nevertheless, this Court feels constrained to follow Mackay as the authority most directly on point, in compliance with the directive issued by the Supreme Court in Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989): "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."[7]

The Court in Holmes Group justified its holding, in part, on the inclination that "allowing responsive pleadings by the defendant to establish [federal subject matter] jurisdiction would undermine the clarity and ease of administration of the well-pleaded-complaint doctrine, which serves as a 'quick rule of thumb' for resolving jurisdictional conflicts." 535 U.S. at 832. As an empirical matter, it is debatable whether the "well-pleaded-complaint-or-counterclaim-rule" rejected by the Court in Holmes Group would be any more onerous to apply than a strict well-pleaded complaint rule. The establishment of any bright-line rule (however that rule happens to be formulated) serves the interests of justice by settling the expectations of litigants and abating costly litigation over threshold issues. Yet, despite the fact that the issues presented in this case are as old

---

[7] Furthermore, at least one post-Holmes Group district court decision relied on a cryptic footnote in the Holmes Group opinion in an effort to avoid the seemingly wide sweep of its holding, where (like here) a removed case had progressed (with the complicity of the litigants) well toward judgment on the basis of a federally-cognizable counterclaim. See Wells Fargo Bank Northwest, N.A. v. Taca International Airlines, S.A., 314 F. Supp. 2d 195, 199 (S.D.N.Y. 2003) (noting that Holmes Group appeared to distinguish "the 'arising under' [original jurisdiction] question being addressed there from the question of a district court's 'retaining jurisdiction' based on a counterclaim once a case was already before it.") (citing Holmes Group, 535 U.S. at 834 n.4).

as the very first Judiciary Act of 1789,[8] this Court is left to determine its jurisdiction by reference to an incongruous collection of lower court decisions, little discernable guidance from the Fourth Circuit, and seemingly irreconcilable mandates from the Supreme Court.

Although raising the jurisdictional issue on the eve of trial may have been procedurally awkward, this Court has an obligation to guard jealously its subject matter jurisdiction at any stage of proceeding, so as to exercise prudent stewardship over its limited resources, and to ensure the inviolability of its judgments. The issue of subject matter jurisdiction now having been raised, the Court must make a determination facing a double-edged sword: If the case is erroneously remanded, the Court risks unsettling the legitimate expectations of the litigants, who have prosecuted this case for almost five years' time through the course of numerous issue-dispositive interlocutory decisions, all in preparation for a federal bench trial. On the other hand, if this case proceeds through an anticipated three-week-long trial in the absence of subject matter jurisdiction, any party aggrieved by the Court's judgment can reduce to a nullity the labors of the Court and counsel, and receive a second bite at the apple in state court. Accordingly, while the Court determines that it shall maintain jurisdiction over this cause for the reasons stated above, the Court further concludes that permitting an interlocutory appeal will serve the interests of justice and all concerned.

## CONCLUSION

In light of the manifest importance of the issues presented, the stark conflict between the Supreme Court's decisions in Mackay and Holmes Group, and the fact that remand following trial and an appeal of final judgment would entail a significant waste of resources, the Court, on its own

---

[8] Ch. 20, §§ 11-12, 1 Stat. 78, 79 (1789), first established diversity jurisdiction with an amount in controversy requirement of $500, and likewise granted a right of removal to a defendant sued in state court.

14

motion, hereby CERTIFIES that its present determination involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, and thereby GRANTS to Plaintiff GreCon Dimter, Inc., permission to take interlocutory appeal of this Order to the United States Court of Appeals for the Fourth Circuit.

This matter is hereby DISCONTINUED from the 22 January 2007 mixed trial term and STAYED pending appeal; provided that Defendant Horner Flooring Co. may file a motion to lift the stay and re-calendar this case for trial at the next available civil trial term should GreCon fail to prosecute an interlocutory appeal or should the Fourth Circuit decline to assume jurisdiction pursuant to 28 U.S.C. § 1292(b).

IT IS SO ORDERED.

Signed: January 11, 2007

Frank D. Whitney
United States District Judge